# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

ROBERT H. DOVE,

          *Plaintiff*,

vs.

          Case No. 07-1311-EFM

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

          *Defendant.*

## MEMORANDUM AND ORDER

This matter comes before the Court on cross motions for summary judgment. Plaintiff Robert H. Dove filed a motion for summary judgment (Doc. 26) which has been fully briefed (Docs. 34, 36) and is ripe for decision. Defendant Prudential Insurance Company of America ("Prudential") filed a motion for summary judgment (Doc. 28) which has also been fully briefed (Docs. 31, 35) and is ripe for decision. For the following reasons, the Court denies Plaintiff's motion and grants Defendant's motion.

**I. Facts**

Hallmark Cards Inc., established and maintained a benefit plan ("Plan") offering accidental death and dismemberment benefits for its employees. Plaintiff Robert H. Dove is covered by the Plan because his wife is an employee of Hallmark Cards, Inc. Defendant Prudential is the insurer and administrator of the Plan. The Plan grants the administrator "discretionary authority to

-1-

determine eligibility for benefits and to construe and interpret the plan/policy terms and provisions." As the Plan administrator, Prudential made all the material decisions regarding Dove's claim for accidental dismemberment benefits.

The Plan provides: "If, while insured for this benefit, you or your dependents suffer accidental bodily injury, which independently of all other causes, results in any losses described herein, we will pay the benefits stated in the Plan Summary." The policy defines "Accidental Bodily Injury" as an "injury that results solely and directly from a Covered Accident and which occurs while the coverage is in force."  "Dismemberment" is defined as "Accidental Bodily Injury that, directly and independently of all other causes, results in the loss of . . . (5) sight."  The Plan states that "Loss of sight means total and permanent loss of sight." The policy also provides that it "will not pay any benefits if the loss directly or indirectly, results from any of the following: sickness, mental illness, disease of any kind, or medical or surgical treatment for any sickness, illness or disease . . . ."

On April 2, 2005, Dove had an accident that resulted in damage to his right eye. The attending physician, Dr. Lee, characterized the accident as "rim of basketball goal ruptured globe and collapsed eye-right eye." Dr. Lee stated that there was no disease or condition prior to the date of the accident that might have served as a contributing cause. Dr. Lee also stated that the last observation of the vision in the right eye on May 31, 2005 was "Lt @ 2ft."

Dove submitted a claim for dependent accidental dismemberment benefits in March of 2006 based on the accident that occurred on April 2, 2005. In April of 2006, Prudential informed Dove that it needed additional information, including medical records from the hospital and Dove's attending physician, before it could render a determination on his claim. Prudential received the

medical records relating to Dove's eye.

These records indicated that Dove initially met with Dr. Lee on January 29, 2004 after being referred to him by another physician, Dr. Sabates. Dr. Sabates had done retinal detachment repair on Dove's right eye, and it was coming detached again. Dr Lee's report characterized the illness as "severe" with aggravating factors of "glaucoma" and glaucoma-related surgery. The January 29, 2004 records also indicated a history of "cataract removal surgery, retinal detachment surgery and repair, glaucoma, a lens implant, trabeculectomy surgery, and Lattice Degeneration disease."

A February 3, 2004 report stated that "everything is a blur" in Dove's right eye, and Dove could count fingers at three feet. On February 16, 2004, Dove was counting fingers at five feet. On June 15, 2004, Dr. Lee noted the distance vision remained at counting fingers. On September 15, 2004, Dove's distance vision was 20/400 and near vision was 20/200. In an operative report, dated September 17, 2004, Dr. Lee reported on a surgical procedure involving the removal of the silicone oil used to treat the retinal detachment in Dove's right eye. On October 26, 2004, Dr. Lee recorded Dove's distance vision as 20/400 and near vision as 20/200.

Dr. Lee's medical records included an operative report, dated April 3, 2005, in which the procedure was described as repair of Dove's ruptured right eye globe as a result of the April 2, 2005 accident. On April 4, 2005, the records indicated that Dove had light perception vision. Dr. Lee's subsequent April records indicated the same thing, and the April 27, 2005 report stated that Dove's vision without glasses was hand motions. Dr. Lee's May 31, 2005 report noted that Dove's vision was light perception and the details were not clear. He recommended no further surgery and stated "I don't think we can salvage this eye."

Prudential denied Dove's claim for dependant accidental dismemberment benefits by letter on October 20, 2006. The letter stated that based on Dove's medical records, he had a history of cataract removal with lens implant, retinal detachment repair and glaucoma all to his right eye. It stated that Dove's last documented visual acuity indicated that his vision in the right eye was 20/400 distance and 20/200 near, and this indicated that Dove was blind prior to the accident. The determination letter noted that the Plan required the accidental bodily injury to be independent of all other causes, and that Dove was permanently blind prior to the accident.

In addition, the letter stated that a loss was not covered if it resulted from "bodily or mental infirmity, disease of any kind or medical or surgical treatment for any such infirmity or disease" and that Dove's medical records indicated a history of "hypertension and was being treated for glaucoma, proliferative vitreoretinopahty (PVR), and cataract removal of the right eye with PCLI-posterior chamber lens implant." The determination letter finally noted that "while an accident did occur, Mr. Dove's loss of vision in his right eye was permanently blind prior to the traumatic global rupture and not all due to an accident but from a [sic] his medial [sic] condition and therefore accidental dismemberment benefits are not payable."

In making the determination to deny Dove's claim for benefits, a physician reviewed Dr. Lee's medical reports and concluded that Dove was permanently blind prior to the April 2, 2005 accident. The physician noted that blindness was defined as 20/400 or visual field of ten degrees or less, and legal blindness was defined as visual acuity of 20/200 of visual field of less than twenty degrees, and the physician determined that Dove was blind prior to the accident. The October 20, 2006 letter informed Dove that he had the right to submit an appeal of the determination.

After Prudential's initial determination, it received a letter from Dr. Lederer dated December 7, 2006. Dr. Lederer indicated that Dove's vision on February 8, 2005 indicated that Dove was able to read 20/200 without correction. On April 11, 2007, Prudential informed Dove that it reviewed Dr. Lederer's information but the information "does not alter the fact that prior to the injury Mr. Dove was already for practical purposes, blind in his right eye with severe loss of visual acuity attributable to other pre-existing eye problems." Prudential upheld the decision denying his claim. In making this decision, a second physician reviewed the claim file.

After the April 11, 2007 decision, Prudential received another letter from Dr. Lederer dated May 14, 2007 and a letter from Dr. Lee dated May 10, 2007. Dr. Lederer corrected a date reference and noted that on February 15, 2005, the vision in Dove's right eye was 20/200. He also noted that on that date, there was "definitely some vision present" and Dove's vision was "not totally lost." Dr. Lee's letter noted that Dove's vision on January 22, 2007 was "light perception." Prudential again upheld its determination denying benefits on July 13, 2007 noting that "Mr. Dove had severe loss of sight before and after the accident, which further damaged his eye but otherwise did not create a new circumstance." In making this decision, a third physician reviewed the claim file.

Plaintiff brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a), challenging the plan administrator's decision to deny coverage for dependent accidental dismemberment benefits. Both Plaintiff and Defendant seek summary judgment.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[1] "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[2] A fact is "material" when "it is essential to the proper disposition of the claim."[3] The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[4]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[5] In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[6]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[7] The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[8] "To accomplish this, the

---

[1] Fed. R. Civ. P. 56(c).

[2] *Haynes v. Level 3 Communications*, LLC, 456 F.3d 1215, 1219 (10th Cir. 2006).

[3] *Id.*

[4] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[5] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

[6] *Id.* (citing *Celotex*, 477 U.S. at 325.)

[7] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[8] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000)(citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[9] Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[10] The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[11]

Summary judgment is not a "disfavored procedural shortcut," but it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[12] Even though the parties have filed cross-motions for summary judgment, the legal standard does not change.[13] The Court must determine if there are any disputed material facts.[14] Each motion will be treated separately.[15]

### III. Denial of Benefits Standard of Review

Plaintiff challenges the plan administrator's decision to deny coverage for dependant accidental dismemberment benefits. The first issue both parties raise is the appropriate standard of review in this case. "A denial of benefits covered by ERISA 'is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'"[16] When the administrator of

---

[9]*Adler*, 144 F.3d at 671.

[10]*White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[11]*Bones v. Honeywell Intern, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[12]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[13]*City of Shawnee v. Argonaut Ins. Co.*, 546 F. Supp. 2d 1163, 1172 (D. Kan. 2008).

[14]*Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

[15]*Id.*

[16]*Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1189 (10th Cir. 2007) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

the plan has been given such discretionary authority, the court reviews the administrator's denial under the more deferential standard of arbitrary and capricious.[17] The Tenth Circuit has stated that arbitrary and capricious is "interchangeable" with abuse of discretion.[18]

The arbitrary and capricious standard requires review of "whether the interpretation of the plan was reasonable and made in good faith."[19] A determination "will be upheld so long as it is predicated on a reasoned basis."[20] A decision is arbitrary and capricious if not supported by substantial evidence.[21] "Substantial evidence is of the sort that a reasonable mind could accept as sufficient to support a conclusion. Substantial evidence means more than a scintilla, of course, yet less than a preponderance."[22]

If the plan administrator is operating under an inherent or proven conflict of interest, it is necessary to dial back the deference given to the administrator's decision.[23] In *Metropolitan Life Insurance Company v. Glenn*, the United States Supreme Court noted that where there is a conflict of interest, that conflict "should be weighed as a factor in determining whether there is an abuse of discretion."[24] The Supreme Court also noted that it was neither "necessary or desirable for courts

---

[17] *Id.* (citing *Fought v. UNUM Life Ins. Co.*, 379 F.3d 997, 1003 (10th Cir. 2004)).

[18] *Weber v. GE Group Life Assurance Co.*, 541 F.3d 1002, 1010 n. 10 (10th Cir. 2008).

[19] *Id.* at 1010 (quotation and citations omitted).

[20] *Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006).

[21] *Id.*

[22] *Id.* (citations omitted).

[23] *Weber,* 541 F.3d at 1010 (citing *Metro. Life Ins. Co. v. Glenn*, ---U.S.---, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008)).

[24] *Glenn*, 128 S.Ct. at 2350 (quotation and citation omitted). Throughout their briefs, the parties refer to this case as *Metropolitan*. Because the Tenth Circuit has referred to the decision as the *Glenn* decision, this Court adopts its approach.

to create special burden-of-proof rules, or other special procedural or evidentiary rules" that focused narrowly on the conflict issue.[25]  "Instead, the Court favored treating the conflict as just one of the relevant factors to be balanced and according it importance based on the likelihood it 'affected the benefits decision.'"[26]

The Tenth Circuit utilizes a "'sliding scale approach' where the reviewing court will always apply an arbitrary and capricious standard, but [will] decrease the level of deference given . . . in proportion to the seriousness of the conflict.  This approach mirrors the *Glenn* Court's method of accounting for the conflict-of interest factor."[27]  In *Weber*, the Tenth Circuit stated that the arbitrary and capricious standard remains the standard of review, but a reviewing court must weigh the "conflict of interest as a factor in determining the lawfulness of the benefits denial."[28]

In this case, the plan grants the administrator discretionary authority to determine eligibility for benefits and to construe and interpret the plan/policy terms and provisions.  Because Prudential, as the administrator, has discretionary authority to determine the eligibility of benefits, the arbitrary and capricious standard applies.  Prudential is both the insurer and administrator of the plan which indicates an inherent conflict of interest.[29]  As such, this Court will employ the arbitrary and

---

[25]*Id*. at 2351.

[26]*Boggio v. Hartford Life and Accident Ins. Co.*, 2009 WL 801795, at *11 (D. Kan. Mar. 25, 2009) (citing *Glenn*, 129 S.Ct. at 2351)).

[27]*Weber*, 541 F.3d at 1010-11 (internal quotations and citations omitted).

[28]*Id.* at 1011. Previously, the Tenth Circuit set forth the standard of review in conflict of interest cases under ERISA and stated that when there is an inherent conflict of interest, a sliding scale of deference should be applied with the plan administrator bearing "the burden of proving the reasonableness of its decision pursuant to this court's traditional arbitrary and capricious standard." *Fought v. UNUM Life Ins. Co. of Am.*, 379 F.3d 997, 1006 (10th Cir. 2004). Although the *Weber* court did not specifically address the *Glenn* court's statement regarding special burden-of-proof rules, the Tenth Circuit stated that a reviewing court must weigh the conflict of interest as a factor. *Weber,* 541 F.3d at 1011. This appears to be in accord with *Glenn*.

[29]*Id*. (citing *Glenn*, 128 S.Ct. at 2349-50).

capricious standard and weigh Prudential's conflict of interest as a factor in determining the lawfulness of its benefits denial.

When there is a conflict of interest, the reviewing court must "take a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned application of the terms of the plan to the particular case, untainted by the conflict of interest."[30] In reviewing the plan administrator's denial of benefits, "we consider only the rationale asserted by the plan administrator in the administrative record and determine whether the decision, based on the asserted rationale, was arbitrary or capricious."[31] When determining whether a rationale was asserted, "we look only to those rationales that were specifically articulated in the administrative record as the basis for denying a claim."[32]

## IV. Analysis

The Court will first address the conflict of interest. Although there is an inherent conflict of interest, Plaintiff fails to address how this conflict may have influenced Prudential's decision in denying Plaintiff benefits. Defendant, however, asserts that there is no evidence that the conflict of interest tainted its review or decision. It states that the record demonstrates: (1) there were no procedural irregularities;[33] (2) two reviews of the initial determination were conducted; (3) an appeal

---

[30]*Degrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1168 (10th Cir. 2006) (quotation and citation omitted).

[31]*Flinders*, 491 F.3d at 1190.

[32]*Id.*

[33]Although Plaintiff does not address whether Defendant's conflict of interest influenced its decision, Plaintiff argues in its motion for summary judgment that Defendant failed to provide a full and fair hearing. Plaintiff states that there is no indication that any of the review team was a health care professional, and there is no indication what documentation the appeal team considered. Plaintiff's contention, however, is not supported by the evidence. The administrative record indicates that a physician was involved in each stage of the review. In addition, each appeal letter stated that Defendant thoroughly evaluated the documentation in the file as well as the documentation received for the appeal. As such, the undisputed facts do not support Plaintiff's contention that Defendant failed to

review was conducted each time Plaintiff's physician provided additional information; and (4) a different physician at each stage reviewed Plaintiff's medical records.  Defendant argues that the conflict of interest should therefore not be a factor.

In *Glenn*, the Supreme Court noted that the conflict of issue "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy . . . ."[34]  Here, it appears that Prudential has taken active steps to reduce potential bias in that it had three different physicians review the claims file at each stage of the proceeding.  In addition, it appears that each physician was given all of Dove's medical records and the additional documentation on review. As such, each physician was given all of the pertinent information to make an informed evaluation about Dove's claim.  From the evidence in front of the Court, the Court cannot conclude that the inherent conflict of interest tainted Prudential's decision. Accordingly, the conflict of interest is a factor that will be less important in determining whether Prudential's determination was arbitrary and capricious.

Defendant asserts that Plaintiff cannot demonstrate that its denial was arbitrary and capricious because Prudential interpreted and applied the Plan terms reasonably and in good faith. Prudential's rationale in denying Plaintiff's benefits was that the accident did not cause Plaintiff's loss of vision because he already suffered permanent loss of vision prior to the accident. The Plan states that "Accidental Bodily Injury" requires an "injury that results solely and directly from a covered accident."  It also states that benefits will not be paid "if the loss directly or indirectly, results from disease, or medical or surgical treatment for any disease."

---

provide a full and fair hearing.

[34]*Glenn*, 128 S.Ct. at 2351.

In denying Plaintiff's claim, Defendant found that based on Plaintiff's medical records, he was permanently blind prior to the accident and that his vision problems were not all due to the accident but from his previous medical condition. Defendant relied on the Plan's language that the injury must result "solely and directly" from a covered accident. Defendant stated that while an accident did occur that did not make Plaintiff's vision any better, it did not create a new circumstance because Plaintiff was already blind.

Plaintiff argues that *Glenn* requires an ERISA administrator to reconcile its determination with recognized authority.[35] This is an incorrect statement of law, and *Glenn* does not stand for this proposition. The *Glenn* court recognized that the court's role in reviewing a plan administrator's decision is whether the plan administrator abused its discretion in denying benefits, and this depends on the circumstances of each case.[36] Accordingly, this Court looks at the relevant factors in this case, including whether Defendant's decision was supported by substantial evidence, and not to previous judicial interpretations of policy language.

---

[35] Plaintiff contends that previous courts have determined that a "loss of sight" insurance provision does not require total blindness but that the sight be of no practical use. Even looking at the facts in this case, it appears that Prudential determined that Plaintiff's sight was of no practical use prior to the accident because Prudential stated that Plaintiff was permanently blind.

[36] *Id.* at 2350-51.

Asserting that Defendant's interpretation of "loss of sight" is inconsistent, Plaintiff states that Defendant has used more than one ambiguous construction of the term.[37] Defendant asserts that when using these terms, it was not seeking to explain the term "loss of sight" but rather to observe the state of Plaintiff's right eye.  Defendant states that the Plan unambiguously defines "loss of sight" as "total and permanent loss of sight," and Plaintiff has never contended that he suffered total and permanent loss of sight.  Defendant also states that the factual findings regarding Plaintiff's eye were not made in the course of construing the term "loss of sight" and were used in explaining why Plaintiff did not suffer loss of sight in his right eye solely and directly from an accident.  It appears to the Court that the Plan terms are unambiguous in defining "loss of sight." As the Court can only consider the rationale asserted in the administrative record, the Court notes that in reviewing Defendant's denial letters, Defendant's observations regarding Plaintiff's right eye were used when explaining that Plaintiff's loss of vision occurred prior to the accident and was not covered by the Plan.  As such, it does not appear that Defendant was defining the term "loss of sight."

Plaintiff asserts that the crux of the issue in this case is at what point in time Plaintiff had a loss of sight by policy terms. Plaintiff primarily argues that Defendant's interpretation of "loss of sight" is unreasonable because it is not consistent with any reported judicial construction of the term and that Defendant failed to consider that Plaintiff lost the practical use of his right eye after the accident. Plaintiff's arguments are unavailing.

The issue is whether Plaintiff's loss of sight resulted from an accidental bodily injury. Plaintiff does not address the issue except to state that he had further vision loss after his accident. Plaintiff also does not address this language in the Plan.  The Plan's language is unambiguous when

---

[37]Some of these terms include: legal blindness, legally blind, severe loss of vision in his right eye, and severe loss of visual acuity.

it defines "accidental bodily injury" as an injury resulting "solely and directly from a covered accident." Prudential, in denying Plaintiff's claim, stated that Plaintiff suffered from loss of sight prior to the accident. As such, Plaintiff's loss of sight was not covered by the language in the Plan.

It appears to the Court that Defendant relied on the evidence in Plaintiff's file which indicated that he had numerous problems with his right eye, including cataract removal surgery, retinal detachment surgery, and 20/400 vision, prior to the accident. This evidence indicated that Plaintiff suffered permanent loss of vision prior to the accident and that the loss of sight in his right eye did not result from an accidental bodily injury that was independent of all other causes. Because the Plan language specifically requires that the loss of sight occur from an accidental bodily injury independent of all other causes, it appears that Prudential's determination was reasonable and supported by substantial evidence. Accordingly, the Court cannot find that Defendant's decision to deny Plaintiff benefits was arbitrary and capricious. As such, Plaintiff has failed to demonstrate that he is entitled to summary judgment, and Defendant has shown that it is entitled to summary judgment.

**IT IS ACCORDINGLY ORDERED** this 18th day of May, 2009 that Plaintiff's Motion for Summary Judgment (Doc. 26) is hereby DENIED.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 28) is hereby GRANTED.

**IT IS SO ORDERED**.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED   STATES   DISTRICT   JUDGE